Jose SANTIAGO, Plaintiff–Appellant,
Cross–Appellee,

v.

Michael P. LANE, et al.,
Defendants–Appellees,
Cross–Appellants.

No. 88–2840.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 6, 1989.

Decided Jan. 23, 1990.

Edward J. Lewis, II (argued), Robert T. Markowski, Jenner & Block, Chicago, Ill., for plaintiff-appellant, cross-appellee.

Thomas A. Morrissey, William D. Fraizer (argued), Asst. Attys. Gen., Office of the Atty. Gen., Chicago, Ill., for defendants-appellees, cross-appellants.

Before BAUER, Chief Judge, and CUDAHY and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

Plaintiff, Jose Santiago, appeals from a summary judgment in his 42 U.S.C. § 1983 action against various officers of the Illinois Department of Corrections for violating his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff's charges stem largely from two brutal attacks he suffered at the hands of other inmates while incarcerated in the Illinois prison system. The district court found as a matter of law that the defendants' failure to take certain precautions to protect the plaintiff could not constitute deliberate indifference to his safety in violation of the Eighth Amendment and that, therefore, defendants could not be liable for injuries suffered by the plaintiff at the hands of other prisoners. 697 F.Supp. 300.

Plaintiff appeals the grant of summary judgment. Defendants cross-appeal the decision of the district court not to impose costs upon the plaintiff. We affirm the summary judgment as to some counts, but conclude that there is an issue of fact for the jury as to others, and we reverse and remand as to them. We also affirm the district court's decision not to impose costs upon the plaintiff.

## I. Facts

On March 22, 1984, Jose Santiago was robbed, beaten and stabbed by two inmates in the "death alley" section of Stateville Correctional Center ("Stateville") where he was incarcerated. After recuperating from his injuries in a private hospital, Santiago was returned to Stateville, whereupon he cooperated with prison authorities in the identification and prosecution of his attackers. Within a week of his return to prison and his cooperation with prison officials, plaintiff was threatened by a gang member who demanded that he leave the prison. In response to these threats, and to the plaintiff's request to be moved to a safer institution, Stateville authorities placed Santiago in "control segregation" pending transfer.

Santiago was sent to Menard Correctional Center ("Menard") on April 11, 1984. The master prison file on Santiago, which contained reports of the Stateville attack, a list of plaintiff's enemies and other materials regarding his transfer was sent to Menard along with the plaintiff, but Stateville authorities never expressly or specifically notified their counterparts at Menard of Santiago's need for protection from possible gang retaliation.

At Menard, plaintiff underwent a seven day orientation program which was designed to determine his security needs. Plaintiff was interviewed by an inmate clerk who learned of the attack at Stateville. Plaintiff also informed Menard counselor Jack Thomas of this attack and the reasons for his transfer. At the conclusion of this orientation period, Santiago was informed that he had been assigned a job in the kitchen and would be living in Menard's South Cell House.[1]

But, Santiago, a prisoner with an excellent institutional record, was sent to the

---

1. Defendants appear to dispute that Santiago was told by an inmate clerk that he would be housed in the South Cell House and would be assigned a job in the prison kitchen. Appellees' Brief at 7. For purposes of summary judgment, however, we must accept plaintiff's version of the facts as true.

East Cell House instead. The East Cell House is the toughest house at Menard and is not normally considered to be an appropriate place for cooperative inmates. Within hours of moving to the East Cell House, Santiago's property was stolen from his cell and he was verbally threatened by two inmate gang members who made references to the previous attack at Stateville.

In response to these new threats, plaintiff quickly informed Major McDonough, Chief of Security at Menard, that he was in fear for his life. More specifically, plaintiff asked Major McDonough to move him to a safer section of Menard that evening. Major McDonough talked with Santiago for approximately forty-five minutes about these threats and about the plaintiff's request to be moved and decided to reassign Santiago to a safer section of Menard the next morning. While escorting Santiago back to his cell, Major McDonough stopped to ask the prison leader of the Latin Kings gang whether Santiago would be in any further danger that night. The gang leader assured McDonough that Santiago was not marked for attack by his gang.[2]

Santiago was returned to his cell just before dinnertime. Shortly after his cellmate (allegedly a gang member) left to eat, plaintiff was attacked in his cell by several Menard inmates wielding homemade knives and pipes. This attack resulted in serious injuries to plaintiff, including permanent eye damage. Apparently, Santiago's cellmate had neglected to lock the cell door behind him even though Santiago, by his own account, had asked his cellmate to make sure that the door was locked.

In response to these two attacks, Santiago filed a § 1983 suit in district court against various Stateville and Menard officers in both their official and individual capacities.[3] Plaintiff is suing Michael P. Lane, Director of the Illinois Department of Corrections; Michael O'Leary, warden of the Stateville Correctional Center; Billy Johnson, Chief of Security (Major) of Stateville; James Thieret, warden of the Menard Correctional Center; and Richard Guebert, Jr.[4] Santiago also brought a pendent Illinois tort law claim against all defendants for negligent, reckless and unlawful conduct.

The district court granted the defendants' motion for summary judgment on all counts and declined to exercise jurisdiction over plaintiff's pendent state law claim since none of plaintiff's federal claims survived. Plaintiff appeals the granting of summary judgment on counts I–V of his complaint. The defendants cross-appeal the district court's decision not to impose costs upon the plaintiff.[5]

## II. Analysis

In his appeal of Counts I–V, Santiago argues that the existence of certain factual disputes precludes summary judgment. To prevail, the defendants must demonstrate

**2.** Apparently, plaintiff had been threatened by the Latin Disciples and not the Latin Kings. Appellant's Appendix at 131–32, 246–47.

**3.** A suit for money damages against a state official in his official capacity is a suit against the state and, as such, is barred by the Eleventh Amendment, unless the state consents. *See Papasan v. Allain,* 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Shockley v. Jones,* 823 F.2d 1068, 1070 (7th Cir.1987). The state of Illinois has not consented to suit in this context. *See* Ill.Ann.Stat. ch. 38, ¶¶ 1001–1201 & ch. 85, ¶ 4–103 (Smith–Hurd 1986). Hence, Santiago's suit, to the extent that it seeks money damages from state officials *qua* state officials, is barred by the Constitution. In addition, the Supreme Court has recently held that neither states nor state officials acting in their official capacities are "persons" within the meaning of 42 U.S.C. § 1983. *Will v. Mich. Dept. of State Police,* ——

U.S. ——, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Plaintiff's suit against these defendants in their official capacities is thus barred by the U.S. Constitution and is not authorized by federal statute.

**4.** Richard Guebert, Jr. is the administrator of the estate of Major Donald McDonough, who had been Chief of Security at Menard. Plaintiff filed a second amended complaint on December 16, 1987, substituting Mr. Guebert as a defendant in his capacity as the administrator of Major McDonough's estate.

**5.** Since the plaintiff has apparently chosen not to appeal summary judgment as to Counts VI and VII of his complaint, judgment as to these counts stands. *Sere v. Bd. of Trustees,* 852 F.2d 285, 290 (7th Cir.1988); *Sanchez v. Miller,* 792 F.2d 694, 703 (7th Cir.1986), *cert. denied,* 479 U.S. 1056, 107 S.Ct. 933, 93 L.Ed.2d 984 (1987).

the absence of any material issue of fact and show that, on the undisputed facts, they are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A genuine issue of material fact exists only where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Wolf v. City of Fitchburg*, 870 F.2d 1327 (7th Cir. 1989), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The trial court must view all evidence in the light most favorable to the party opposing the motion for summary judgment. *Bowyer v. U.S. Dept. of Air Force*, 804 F.2d 428, 430 (7th Cir. 1986). Our review of a grant or denial of summary judgment is, of course, *de novo. Dribeck Importers, Inc. v. G. Heileman Brewing Co., Inc.*, 883 F.2d 569, 573 (7th Cir.1989) (quoting *Colan v. Cutler–Hammer, Inc.*, 812 F.2d 357, 360 (7th Cir.) (per curiam), *cert. denied*, 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 42 (1987)); *Central States, S.E. & S.W. Areas Regional Pension Fund v. Jordan*, 873 F.2d 149, 152 (7th Cir.1989). We must examine the entire record in the same fashion as the district court, drawing all inferences in favor of the nonmovant. *Richardson v. Penfold*, 839 F.2d 392, 394 (7th Cir.1988). We must also, of course, apply the law to the undisputed facts; in this case the law is that implicated by the plaintiff's Eighth Amendment claims.

The Eighth Amendment, as incorporated by the Due Process Clause of the Fourteenth Amendment, prohibits a state from inflicting cruel and unusual punishment. In *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court held that deliberate indifference by prison employees to a prisoner's serious illness or injury constitutes cruel and unusual punishment. The "deliberate indifference" standard articulated in *Estelle* has been extended "to impose upon both federal and state correctional officers and officials the obligation to protect inmates from violence at the hands of other inmates." *Goka v. Bobbitt*, 862 F.2d 646, 649 (7th Cir.1988). As a result, "a prison official will be held liable for failing to protect an inmate from attacks if that official acts with 'deliberate indifference.' " *Richardson v. Penfold*, 839 F.2d at 394, *citing Duckworth v. Franzen*, 780 F.2d 645, 652 (7th Cir.1985), *cert. denied*, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986). In order to show "deliberate indifference," a plaintiff is required to prove that the prison official's action was deliberate or reckless in the criminal sense.[6] *Goka v. Bobbitt*, 862 F.2d at 650.[7]

## A. The Stateville Attack

Count I of Santiago's complaint involves charges that defendants Lane, O'Leary and Johnson knew, had reason to know or should have known that the "death alley" section of Stateville Prison was a "high risk area" because the area was dangerously concealed and because at

---

**6.** "A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." Model Penal Code § 2.20(2)(c). *See also Duckworth v. Franzen*, 780 F.2d 645, 652–53 (7th Cir.1985), *cert. denied*, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986).

**7.** In its memorandum opinion, the district court noted that the definition of "deliberate indiffer-

ence" is not perfectly settled in this circuit. Mem. Op. at 6. Some of our cases have held, for example, that gross negligence is enough to satisfy the standard. *See Benson v. Cady*, 761 F.2d 335, 339–40 (7th Cir.1985). The Supreme Court has, however, cited one of our decisions which contained the criminal recklessness definition with approval. *Whitley v. Albers*, 475 U.S. 312, 321, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986), *citing Duckworth v. Franzen*, 780 F.2d at 653 (defining criminal recklessness as "actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it."). Hence, we will use the criminal recklessness standard to evaluate the defendants' conduct.

least one other prisoner-on-prisoner attack had occurred there. But, as the district court correctly pointed out, the plaintiff presented no affirmative evidence that any prisoner-on-prisoner attacks had occurred in this area prior to the March 22, 1984 attack upon him. Mem. Op. at 8–9. Without specific reason to know of a danger that this area of the prison yard posed to Santiago in particular, the defendants cannot be charged with being "deliberately indifferent"—with "consciously disregarding" a threat—to his safety. Thus, plaintiff presents no question of material fact as to this claim.

Plaintiff also contends in Count I that the fact that the "death alley" area was later fenced in by the Department of Corrections supports his argument that it was dangerous and that the defendants knew or should have known that the area put prisoners at risk of attack. But, action taken by the Illinois Department of Corrections *ex post* does not speak to the knowledge of defendants *ex ante*. We therefore conclude, as a matter of law, that any omissions on the part of the defendants cannot be characterized as deliberate indifference and that, consequently, defendants are entitled to summary judgment on this count.

For similar reasons, summary judgment as to Count II, which also involved the Stateville attack, must also be affirmed. In Count II, Santiago alleges that it was the policy of defendants Lane, O'Leary and Johnson not to train prison escorts to prevent, halt or respond to inmate assaults, and that this policy resulted in plaintiff's injury. But, as discussed above, Santiago presented no evidence that defendants knew that the prison yard was unsafe for Santiago. Without specific knowledge that a need for trained escorts existed with respect to the "death alley" section of the prison, the defendants cannot be charged with being "deliberately indifferent" to Santiago's safety by promoting policies which led to the inadequate training of civilian staff. Accordingly, summary judgment is also affirmed as to Count II of plaintiff's complaint.

### B. Transfer from Stateville to Menard

In Count III of his complaint, plaintiff charges that defendants Lane, O'Leary and Johnson did not develop any policies or procedures to notify other institutions that an inmate being transferred for safety reasons "belonged to an identifiable class of inmates for whom there was a serious risk of harm." Complaint at ¶ 66. Plaintiff's underlying theory is that the defendants' recklessness created a situation that facilitated unsafe placements. Plaintiff reasons that, with specific warning, Warden Thieret or Major McDonough would have more closely supervised Santiago's placement or would have checked on Santiago's cell assignment in time to prevent the Menard attack.

In support of this argument, Santiago asks us to look at the facts surrounding his transfer to Menard. Plaintiff alleges, for example, that his original cell assignment at Menard was made by another inmate—not Menard officials—and that his cellmate in the East Cell House was a known gang member. Plaintiff also points to the testimony of Menard's Warden, James Thieret, who acknowledged in a deposition that he was unaware that Santiago—who had been transferred for safety reasons—was even a resident of Menard. Appellant's App. at 216. Major McDonough (Chief of Security at Menard) himself questioned Santiago's placement in the toughest area of the prison. *Id.* at 116.

In light of our Eighth Amendment precedents concerning "deliberate indifference," plaintiff's showing of the facts surrounding his transfer to Menard are sufficient to create an issue of fact. *See, e.g., Walsh v. Mellas*, 837 F.2d 789 (7th Cir.1988) (holding that the failure of prison officials to screen the files of inmates assigned to the investigative status area of the prison for compatibility with cellmates violated the Eighth Amendment), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2832, 100 L.Ed.2d 933 (1988). At first glance, the plaintiff's claim that defendants Lane, O'Leary and Johnson "caused" his injury by failing to inform Menard officials of the facts surrounding his transfer might seem to stretch current Eighth

Amendment law. But, as the Supreme Court recently stated, if "the need for more or different [action] is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, ... the policymakers ... can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, —— U.S. ——, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989).

In their defense, the defendants point to the fact that Menard officials discovered on their own that Santiago had been transferred and that he had been attacked while incarcerated at Stateville. The defendants also point to the transfer of Santiago's master prison file (which contained details of the Stateville attack) as evidence of an adequate policy to protect inmates transferred for safety reasons. The defendants claim that these facts relieve them of any constitutional responsibility for the plaintiff's injuries.

However, the issue whether the transfer of the plaintiff's master file was sufficient to negate an inference of deliberate indifference cannot be determined as a matter of law, but must be assessed at trial. The finder of fact should decide whether the transfer of the plaintiff's master file satisfied the defendants' constitutional duty to him. In addition, any knowledge on the part of Menard officials goes primarily to the liability of Menard authorities, not to the alleged indifference of the Stateville, and other Department of Corrections, defendants. The issue in Count III is not whether officials at Menard were deliberately indifferent to Santiago's safety, but whether defendants Lane, O'Leary and Johnson satisfied their constitutional obligation to protect an inmate known to be at risk of attack. It is, thus, not clear, as a matter of law, that defendants Lane, O'Leary and Johnson were not deliberately indifferent in sending Santiago to another prison without a specific warning that he was the target of inmate attack.

Since we must view the evidence in the light most favorable to the plaintiff, the plaintiff's showing that the defendants failed to take any action to notify Menard officials of his predicament is enough to create a material issue of fact. Of course, the defendants deny many of these allegations and contend that they pursued an adequate policy to deal with institutional transfers made for safety reasons. Whether their policy was adequate and whether their defenses have merit are questions for the finder of fact. We simply conclude that the district court erred in granting summary judgment on Count III of plaintiff's complaint.

## C. The Menard Attack

Count IV of plaintiff's complaint involves an allegation that Major McDonough's failure to move Santiago promptly, on an emergency basis, demonstrated a callous indifference to the strong likelihood that Santiago was in danger. The district court granted summary judgment on Count IV because it found that Major McDonough had not been deliberately indifferent to the plaintiff's safety but had actually showed concern for Santiago's well-being. The district court also noted that Santiago never requested protective custody and that he had neglected to make sure that his cell door was locked, thereby allowing the attack to occur. Mem. Op. at 11.

If, based on the record, inferences contrary to those drawn by the trial court are also plausible, summary judgment must be reversed. *Munson v. Friske*, 754 F.2d 683, 690 (7th Cir.1985), *citing United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). But, a simple dispute as to the facts will not bar summary judgment unless "the disputed fact is outcome determinative under governing law." *Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir.1987).

Contrary to the district court, we find a dispute in the record as to whether the plaintiff requested or refused protective custody. We know that Santiago did, in fact, ask to be transferred to different quarters. The defendants' brief appears not to contest this fact. Appellees' Brief at 9 (citing to plaintiff's deposition, Appellant's App. at 116). Major McDonough stated, however, that plaintiff refused his

offer of protective custody at least three times. Appellant's App. at 201–02. The plaintiff, on the other hand, asserted in his deposition that Major McDonough never offered him protective custody at all. *Id.* at 117.

Only the trier of fact can resolve a conflict like this. *See Davis v. Zahradnick,* 600 F.2d 458 (4th Cir.1979) (summary judgment is inappropriate when affidavits require credibility determinations). Moreover, the dispute between the testimony of Santiago and that of Major McDonough raises questions of motive and intent (*i.e.,* recklessness or callous indifference) on the part of Major McDonough which are particularly inappropriate for summary adjudication. *Connor v. Reinhard,* 847 F.2d 384 (7th Cir.1988) (summary judgment is inappropriate where the underlying issue is one of motivation, intent, or some other subjective fact); *Cedillo v. Int'l Ass'n of Bridge, Etc.,* 603 F.2d 7 (7th Cir.1979), *citing Moutoux v. Gulling Auto Elec., Inc.,* 295 F.2d 573, 576 (7th Cir.1961).

Plaintiff is entitled to the benefit of the doubt on summary judgment. *DeValk Lincoln Mercury, Inc. v. Ford Motor Corp.,* 811 F.2d 326, 329 (7th Cir.1987) (doubts as to the existence of a material fact should be resolved in favor of the nonmovant); *Dreher v. Sielaff,* 636 F.2d 1141, 1143 n. 4 (7th Cir.1980). Because the lower court was incorrect in claiming that "[t]here is no evidence that plaintiff ever requested protective custody at Menard and that McDonough (or any other Menard defendant) denied it" (Mem. Op. at 11), because a factual dispute involving credibility is raised by the competing positions of the parties and because the deliberate actions of McDonough in introducing Santiago to a known gang member and in returning Santiago to his cell after Santiago had expressed fear for his safety can be interpreted as reckless or indifferent conduct (as opposed to concern for Santiago's safety, as found by the district court), summary judgment must therefore be reversed on Count IV.

The defendants argue that they cannot be held responsible for the Menard attack because it was the plaintiff, himself, who failed to make sure that his cell door was locked.[8] But, it is well settled that contributory negligence is not a defense to an allegation of intentional or reckless conduct. *Teamsters Local 282 Pension Trust Fund v. Angelos,* 762 F.2d 522, 527–28 (7th Cir.1985); Prosser & Keeton, *The Law of Torts* 462 (5th ed. 1984). Moreover, this Circuit has already stated that "prison authorities, having placed the inmate in a position of danger, cannot shrug off all responsibility when the danger materializes and injury results." *DeShaney v. Winnebago Cty. Dept. of Soc. Servs.,* 812 F.2d 298, 304 (7th Cir.1987), *rev'd on other grounds,* —— U.S. ——, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). Finally, we note that the questions of who "caused" the Menard attack and whether plaintiff's failure to make sure that his cell door was locked was foreseeable to the defendants are to be adjudged at trial because they present issues of material fact as to whether or not the defendants are liable for plaintiff's injuries. For all these reasons, we believe that the district court erred in holding that no reasonable jury could find that McDonough's actions constituted deliberate indifference to plaintiff's safety. *See Watts v. Laurent,* 774 F.2d 168, 171 (7th Cir.1985) (upholding judgment against prison officials where "reasonable people could have differed about whether each of the defendants had sufficient knowledge to realize that a 'strong likelihood' of attack existed."), *cert. denied,* 475 U.S. 1085, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986).

In Count V, Santiago challenges the failure of officials at Menard to take any measures to protect inmates who were transferred for safety reasons and who faced a substantial risk of additional harm. The evidence shows, however, that there were several policies in effect, such as the seven-day orientation period, which were designed to identify and protect prisoners

**8.** Plaintiff asserts that the defendants are raising this defense for the first time on appeal. Appellant's Reply Brief at 19. Arguments not raised before the district court are waived on appeal. *Altobello v. Borden Confectionary Products, Inc.,* 872 F.2d 215, 216 (7th Cir.1989).

who were at risk of inmate attack. We think these measures negate Eighth Amendment liability as a matter of law. Accordingly, we affirm summary judgment as to Count V.

### D. Qualified Immunity

█ The defendants argue that, even if summary judgment fails as to any of the counts in plaintiff's complaint, they are nevertheless qualifiedly immune from suit. We reject this contention.

Under the doctrine of qualified immunity, public officials performing discretionary functions are protected against suits for damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 [102 S.Ct. 2727, 2738, 73 L.Ed.2d 396] (1982). This standard requires that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 [107 S.Ct. 3034, 3039, 97 L.Ed.2d 523] (1987). Thus, while the very act in question need not have been held unlawful, the unlawfulness of the official's conduct must have been apparent in light of pre-existing law. *Id.*

*Doe v. Bobbitt,* 881 F.2d 510, 511 (7th Cir. 1989).

The Eighth Amendment law implicated by this case has been well delineated in this Circuit. In *Watts v. Laurent,* 774 F.2d 168 (7th Cir.1985), *cert. denied,* 475 U.S. 1085, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986), for example, we held that "where it can be inferred that an institutional employee should have realized that there was a 'strong likelihood' of an attack" that employee can be held liable for violating the Eighth Amendment. *Id.* at 172, *citing to Redmond v. Baxley,* 475 F.Supp. 1111, 1117 (E.D.Mich.1979). *See also Matzker v. Herr,* 748 F.2d 1142, 1149–50 (7th Cir.1984). In light of these, and other precedents, the defendants cannot thus be heard to complain that they were unaware of the scope of their duty running to Santiago. Hence, the defense of qualified immunity is unavailable to the defendants here.

### III. Conclusion

Considering the evidence in the light most favorable to Santiago, we conclude that there is a genuine issue of material fact as to whether some of the defendants' various failures to act amounted to deliberate indifference in violation of the Eighth Amendment. Accordingly, the decision of the district court is affirmed as to Counts I, II and V and reversed and remanded as to Counts III and IV. In light of this outcome, we also affirm the district court's judgment that each party bear its own costs.

AFFIRMED in part and REVERSED and REMANDED in part.