897 F.2d 896
 James E. WILKS, Plaintiff-Appellant,
v.
Carol YOUNG, as Personal Representative of the Estate of
Warren Young, Thomas Borgen, Gary McCaughtry, John
or Jane Doe Number 1, John or Jane Doe
Number 2, Defendants-Appellees.
 No. 89-2113.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 26, 1990.
Decided March 14, 1990.
Rehearing and Rehearing En Banc Denied May 7, 1990.
 
 Jonathan Aked, Lafollette & Sinykin, Madison, Wis., for plaintiff-appellant.
 Deidre K. Peterson, Asst. Atty. Gen., Wisconsin Dept. of Justice, Milwaukee, Wis., for defendants-appellees.
 Before BAUER, Chief Judge, and CUMMINGS and KANNE, Circuit Judges.
 KANNE, Circuit Judge.
 
 
 1
 Plaintiff, James E. Wilks, is a former inmate at the Waupun Correctional Institution ("WCI") in Waupun, Wisconsin. After suffering three personal assaults at the hands of Henry Montes, a co-inmate at that facility, he filed a civil action for money damages and injunctive relief under 42 U.S.C. Sec. 1983 in the District Court for the Western District of Wisconsin. Plaintiff's complaint alleged that his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to due process had been violated through the defendants' failure to implement existing prison policies which may have served to prevent the assaults which he suffered.[1] Plaintiff subsequently added a state negligence claim against the defendants premised on the same underlying facts. The jury's verdict, although concluding that defendants had not violated plaintiff's civil rights under Sec. 1983, did award plaintiff $1 in damages as against defendant Borgen under the state negligence claim. As a result of post-verdict motions, however, the court dismissed this damage award on the grounds of Wisconsin state immunity law. Plaintiff's appeal from these final decisions asks this court for a new trial. We affirm in part, reverse in part, and remand for a new trial.
 
 
 2
 Plaintiff's arguments on appeal are not factually based. Rather, they focus on the nature of the instructions given to the jury at the close of trial and the propriety of the district court's dismissal of plaintiff's $1 damage award. We will address each of plaintiff's allegations in turn.
 
 
 3
 At the close of the evidence, the court instructed the jury as to the standard to be employed in determining whether defendants had violated plaintiff's civil rights under the Eighth and Fourteenth Amendments. On the issue of direct liability, the court's jury instruction No. 2 stated:
 
 
 4
 In order to find that a defendant acted with reckless disregard or deliberate indifference to plaintiff's safety, you must find that plaintiff has proven that there was 1) a pervasive or substantial risk of harm to plaintiff James Wilks from attacks; 2) that the defendant knew of the substantial risk that violence would occur; and 3) that the defendant disregarded that risk or failed to take reasonable measures to protect the plaintiff James Wilks from the risk of attack (emphasis added).
 
 
 5
 Plaintiff argues that this jury instruction improperly precluded the jury from considering defendants' "objective knowledge" of the risk of assault and, in so doing, erroneously raised his burden of proof with regard to his civil rights claims.[2] We agree.
 
 
 6
 In Richardson v. Penfold, 839 F.2d 392, 394 (7th Cir.1988), this court reiterated its position under the Eighth Amendment that "a prison official will be liable for failing to protect an inmate from attacks if that official acts with 'deliberate indifference.' " See also Estelle v. Gamble, 429 U.S. 97, 104-06, 97 S.Ct. 285, 291-92, 50 L.Ed.2d 251 (1976); Benson v. Cady, 761 F.2d 335, 339 (7th Cir.1985). The burden upon a plaintiff to show "deliberate indifference" in this regard is not simply one of showing inattention or inadvertence. Rather, this court has stated that a plaintiff must show that a prison official acted with "actual intent or reckless disregard." Benson, 761 F.2d at 339. Finally, "[a] defendant acts recklessly when he disregards a substantial risk of danger that either is known to him or would be apparent to a reasonable person in his position." Id. (emphasis added); cited with approval in Richardson, 839 F.2d at 395. Based on these principles of Eighth Amendment tort jurisprudence, it is clear that the imposition of liability in this context is not limited to only those situations in which the defendant had subjective knowledge of the risk of harm. Rather, liability may be imposed under certain circumstances in which the defendant has only objective knowledge of the risk of harm.[3] In that the court's Instruction No. 2 failed to apprise the jury of this potential basis of liability, the judgment cannot stand and a new trial must be granted.
 
 
 7
 Defendant's complaints regarding the propriety of the jury instructions are not limited to those that were actually given. Over plaintiff's objection, the court refused to tender an instruction to the jury on the potential liability of defendants in their capacities as supervisory officials.[4] Arguing that the absence of this instruction served to ensure an improper presentation of existing law which jeopardized the success of his constitutional claim, plaintiff again argues that a new trial is warranted. We agree.
 
 
 8
 As recently as last year, the Supreme Court acknowledged that supervisory officials may be liable for constitutional deprivations, even in circumstances where the official was not directly involved in the deprivation itself. City of Canton v. Harris, --- U.S. ----, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); see also Rascon v. Hardiman, 803 F.2d 269, 274 (7th Cir.1986) (In order to establish a claim against a supervisory official under Sec. 1983, a plaintiff must show that the official knowingly, willfully, or at least recklessly caused the alleged deprivation by his action or failure to act). In Canton, the Court determined that in certain circumstances a municipality can be liable under 42 U.S.C. Sec. 1983 for constitutional violations resulting from its failure to adequately train municipal employees. --- U.S. at ----, 109 S.Ct. at 1200. The question presented in Rascon, one which is closely related to that which is presented to the court today, was whether a director of a correctional facility could be held liable under Sec. 1983 for the injuries sustained by an inmate who was improperly disciplined by prison officials. This court concluded that under certain circumstances, such liability can be imposed. Plaintiff's proposed instruction on supervisory liability within the context of the Waupun prison facility asked the district court to do no more than inform the jury that such a theory of liability was available to the plaintiff. We believe such an instruction should have been given.
 
 
 9
 Finally, plaintiff argues that the district court's post-verdict dismissal of his negligence award was erroneous. This dismissal was premised upon the general rule of immunity for public officers in Wisconsin which states that "a public officer or employee is immune from personal liability for injuries resulting from acts performed within the scope of the individual's public office." C.L. v. Olson, 143 Wis.2d 701, 710, 422 N.W.2d 614, 617 (1988); see also Lister v. Board of Regents, 72 Wis.2d 282, 300, 240 N.W.2d 610, 621 (1976). Plaintiff argues, however, that the actions of the defendants in this case fall within one of the two recognized exceptions to this general rule of immunity. These recognized exceptions state that a public officer is not entitled to immunity for (1) the negligent performance of a ministerial duty, or (2) conduct that is malicious, willful and intentional. Olson, 143 Wis.2d at 710, 422 N.W.2d at 617. We conclude that defendants' actions in this case do not fall within either of these recognized exceptions and, accordingly, affirm the district court's dismissal of the state law negligence award.[5]
 
 
 10
 Our disposition of this final claim requires us to determine whether the defendants' actions were discretionary or ministerial in nature. Speaking to this issue, the Wisconsin Supreme Court has summarized:
 
 
 11
 [E]xception to the general rule of public officer immunity exists where the public officer's or employee's duty is absolute, certain and imperative, involving merely the performance of a specific task and (1) the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion, see, e.g., Lister, 72 Wis.2d at 300-01, 240 N.W.2d at 622; or (2) there exists a known present danger of such force that the time, mode and occasion for performance is evident with such certainty that nothing remains for the exercise of judgment and discretion, see, e.g., Cords [v. Anderson], 80 Wis.2d 525, 541, 259 N.W.2d 672, 679-80 (Wis.1977).
 
 
 12
 Olson, 143 Wis.2d at 717, 422 N.W.2d at 620. Plaintiff premises his argument in this respect on the latter conception of "ministerial duty" as recognized by the Wisconsin Supreme Court in Cords v. Anderson.
 
 
 13
 In Cords, the Wisconsin Supreme Court denied immunity to the manager of a state-owned conservatory who had failed to take adequate action to provide for the safety of visitors to that park. The imposition of liability and, more specifically, the denial of immunity was premised on the Court's conclusion that the park official's duty to post warning signs or, in the alternative, to advise his superiors of the dangerous conditions was "so clear and absolute that it [fell] within the definition of a ministerial duty." 80 Wis.2d at 542, 259 N.W.2d at 680. We do not find such a "clear and absolute duty" on the part of these defendants. As such, we reject plaintiff's assertion that defendants' failure to act falls within any recognized exception to the immunity doctrine.
 
 
 14
 The Waupun Correctional Institution maintains "face cards" on each inmate which provide information on that inmate's history as well as on any conduct reports he has received during his period of incarceration. Shortly after Montes' first assault on Wilks, the following information was added to plaintiff's face card: "Do not house in same housing unit as Montes, Fitzpatrick, Grant. Do not assign to same work as Montes. Assault on inmate 3/6/80." Similarly, Montes' face card was amended to add the following: "Do not house in the same housing unit as Hampton or Wilks. Do not assign to the same work as Wilks." Despite these notations, Wilks and Montes were housed in the same north cell hall at the time of both the second and third assaults. Based solely on this information, it would appear that there might be cause to discard the immunity doctrine for the defendants who permitted Wilks and Montes to be placed in the same housing unit. This information by itself, however, does not accurately define the restraints placed upon the WCI officials in making housing unit determinations.
 
 
 15
 Thomas Nickel, the Security Director at WCI, testified that these designations on Wilks' and Montes' face cards had no impact on the housing arrangements within the north cell hall program unless they were specifically marked to be "separated in segregation status." (Trans. 1-97 thru 1-100). In clarification, Mr. Nickel testified that these designations simply meant that "those individuals could not be housed in the same cell hall while they were in the general population." (Trans. 1-114). At the time of the third assault, Wilks had been placed in the north cell hall segregation unit. Thus, Wilks was not in "the general population" with Montes and the notation on his face card did not substantially restrict the discretion of the prison official in assigning him to a segregated unit of the north cell hall. Nor was there any indication that Wilks and Montes were housed "in the general population" at the time of the second assault.[6] Accordingly, we conclude that the actions of the prison officials were not ministerial and affirm the dismissal of the state law damage award.
 
 
 16
 In light of the deficiencies of the jury instructions with regard to plaintiff's Sec. 1983 civil rights claim, we reverse and remand for a new trial. We affirm, however, the district court's dismissal of the state law negligence award.
 
 
 
 [1]
 As originally filed, plaintiff's complaint named the former WCI Warden and his Associate Warden of Security--Warren Young and Thomas Borgen, respectively--as the defendants. During the course of the lawsuit, defendant Warren Young died. Plaintiff then amended his complaint to name Young's personal representative, Carol Young, as an additional party. In addition, the new Superintendent at WCI, Gary McCaughtry, was added as a defendant for injunctive purposes
 
 
 [2]
 Plaintiff's proposed jury instruction on this issue provided, in pertinent part:
 (2) that the defendant knew or should have known of the substantial risk that violence would occur, or it would have been apparent to a reasonable person in his position....
 The italicized portions were rejected by the court.
 
 
 [3]
 An objective knowledge of a risk of harm by itself, however, is not enough to impose liability under the Eighth Amendment. As an additional requirement, the risk must be substantial. Benson, 761 F.2d at 339-40. Defendants' arguments to the effect that the risk, if any, was minimal are more appropriately addressed to this aspect of the liability equation and cannot alter the legal requirement that a proper jury instruction be given
 
 
 [4]
 Plaintiff does not allege and, in fact, distinguishes this theory from respondeat superior. Under the theory of respondeat superior, liability "flows up" from the negligent agent/employee to that person's supervisor. Plaintiff's "supervisory liability" theory argues that the negligence involved has its foundation at the policy-making level--i.e., with the Warden and the Associate Warden for Security. See, e.g., Rascon v. Hardiman, 803 F.2d 269, 274 (7th Cir.1986)
 
 
 [5]
 Plaintiff also argues that this court should take this opportunity to fashion a third exception to the immunity doctrine--i.e., one in which immunity would not be available in the setting of a correctional institution. As federal courts presiding over this claim on the basis of pendent jurisdiction, this court and the district court below are obligated to apply state law. Felder v. Casey, 487 U.S. 131, 148, 108 S.Ct. 2302, 2313, 101 L.Ed.2d 123 (1988). In light of our limited authority in this regard, we decline plaintiff's invitation to restrict the scope of potential immunity under Wisconsin state law
 
 
 [6]
 The second assault occurred after prison officials had released Wilks and Montes from their segregated units to shower at the same time. The testimony reveals that inmates were handcuffed by prison officials prior to being released from their cells in the program segregation units (Trans. 1-100). Moreover, while the prisoners were showering, a guard would stand at the grill door leading to the shower room (Trans. 1-101). Thus, it appears that the guards had done all that was required of them even during the second attack