4 F.3d 997
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Nathan ROBINSON and Kathryn Green, Plaintiffs-Appellants,
v.
E.J. BRENNAN, J. Michael Quinlin, Calvin R. Edwards, et al.,
Defendants-Appellees.
 Nos. 91-3412, 92-1534.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 20, 1993.
Decided Sept. 14, 1993.
 
 1
 Before CUMMINGS and ROVNER, Circuit Judges, and MILTON I. SHADUR, Senior District Judge*.
 
 ORDER
 
 2
 Nathan Robinson, a federal prisoner, alleges that the defendant prison officials violated his eighth amendment rights when they were deliberately indifferent to his safety and serious medical needs and subjected him to prolonged confinement in administrative detention. Robinson and plaintiff Kathryn Green also allege that their equal protection rights were violated when they were racially harassed by certain defendants in the visiting room of the federal correctional facility in Oxford, Wisconsin. The district court granted defendants' motion for summary judgment and subsequently denied plaintiffs' motion for reconsideration pursuant to Fed.R.Civ.P. 60(b). Plaintiffs appeal from both orders, and we affirm.
 
 I. FACTS
 
 3
 During an earlier period of incarceration, Robinson had witnessed a murder at a federal correctional facility. He provided information and other assistance to the government in its investigation of that murder. As a result, when he returned to prison after a later conviction, Robinson believed that he was in danger from a group known as the Aryan Brotherhood, which allegedly harasses those members of the prison population who assist government prosecutions. Prison officials were aware of the risk to Robinson's personal safety and accordingly classified him in the Central Inmate Monitoring ("CIM") program, which permitted the Bureau of Prisons to monitor and control his transfer, temporary release, and community activities. Robinson was classified as a "separation case" based on his inclusion in the categories of institution conflict and pro-government witness.
 
 
 4
 On August 22, 1988, defendant Calvin R. Edwards recommended to defendant Larry DuBois that Robinson be housed separately from five inmates at the Terre Haute, Indiana correctional facility who had been identified as members of the Aryan Brotherhood, and Robinson was notified of this classification. Yet, Robinson was later assaulted at that facility by Stanley Holmes, an individual not included in the earlier separation order. Prior to this assault Robinson had informed prison officials that Holmes posed a danger because Robinson had refused to help Holmes bring drugs into the institution. Robinson's wife also had written a letter to a Terre Haute employee advising that Robinson was in danger from Holmes.
 
 
 5
 After the Terre Haute assault, Robinson was transferred to a number of other federal facilities for his own protection. On August 6, 1990, Robinson was transferred to Oxford, Wisconsin. On August 29, Robinson was interviewed by a team consisting of three of the defendants in order to review his CIM classification and the appropriateness of his assignment to Oxford. Shortly thereafter, another inmate was added to the list of those from whom Robinson was to be segregated.
 
 
 6
 Other inmates at Oxford requested money from Robinson in return for protecting him, and Oxford prison officials were aware of this activity. On March 6, 1991, Robinson reported that he had been assaulted by two inmates in the television room at Oxford. He was examined by a doctor on the following day who found no physical sign of injury. After this alleged assault, Oxford officials granted Robinson's request for assignment to the administrative detention portion of Oxford's special housing unit. Robinson subsequently received a number of additional medical examinations. On May 22, 1991, Robinson requested that he be released from administrative detention, but defendant Bruce Jefferson advised him to remain in segregation for his own protection.
 
 
 7
 Green visited Robinson while he was incarcerated at Oxford. Green is a Caucasian woman, and Robinson an African-American man. During these visits, defendant G.L. Murphy was the visiting room officer. On at least one occasion, Murphy warned Green and Robinson about excessive intimate behavior in the visiting room.
 
 
 8
 The district court also found that the following facts were disputed but that it would accept them as true for purposes of defendants' summary judgment motion: Murphy made racially derogatory remarks to Green and Robinson in the visiting room, and other defendants also harassed plaintiffs about their interracial relationship while they were in the visiting room.
 
 
 9
 After defendants moved for summary judgment, plaintiffs filed a brief in opposition to the motion, but they requested additional time to conduct further discovery and to file additional evidentiary materials. The district court allowed two additional weeks but refused plaintiffs' request that it postpone decision on the motion until August 20, 1990, because the jury in the case was scheduled to be chosen the previous day.[1] Plaintiffs filed their additional evidentiary materials on July 29, 1991, as ordered by the district court, but they also submitted additional discovery requests to defendants on August 16, 1991. The district court granted defendant's motion for summary judgment on August 19, however, and plaintiffs never received responses to their supplemental discovery requests.
 
 
 10
 On plaintiffs' eighth amendment claim, the district court found that defendants had not been deliberately indifferent to Robinson's safety because there was no evidence that they had acted with actual intent or reckless disregard of any substantial risk of harm to Robinson. Similarly, the district court found no evidence that defendants had been deliberately indifferent to Robinson's medical needs because they had consistently provided him medical treatment. Moreover, continued confinement in administrative detention did not support an eighth amendment claim because that confinement did not constitute the wanton and unnecessary infliction of pain. Finally, the district court also granted summary judgment on the equal protection claim, finding that there had been no allegation that defendants had an agreement to inflict a wrong on plaintiffs and that racially derogatory remarks alone were insufficient to establish an equal protection violation.
 
 
 11
 Plaintiffs subsequently filed a motion to reconsider, arguing that newly discovered evidence created factual issues as to a number of their claims. That evidence primarily concerned the fact that inmates at both Terre Haute and Oxford had extorted money from Robinson in return for protecting him. The district court denied the motion, and plaintiffs appeal.
 
 II. DISCUSSION
 
 12
 We review the district court's grant of summary judgment de novo. "To prevail, the defendants must demonstrate the absence of any material issue of fact and show that, on the disputed facts, they are entitled to judgment as a matter of law." Santiago v. Lane, 894 F.2d 218, 221 (7th Cir.1990). We view all the evidence in the light most favorable to plaintiffs and accord them the benefit of all reasonable inferences to be drawn therefrom. Lister v. Stark, 942 F.2d 1183, 1187 (7th Cir.1991). Summary judgment was improvidently granted if plaintiffs produced sufficient evidence for a jury to return a verdict in their favor. See Santiago, 894 F.2d at 221. In contesting the motion, plaintiffs may not rest on their pleadings; instead, they must "demonstrate, through specific evidence, that there remains a genuine issue of triable fact." Lister, 942 F.2d at 1187. We also are mindful that summary judgment is not the appropriate occasion to resolve a swearing contest between plaintiffs and defendants. Jackson v. Duckworth, 955 F.2d 21, 22 (7th Cir.1992).
 
 A. Eighth Amendment Claims
 
 13
 Robinson asserts three distinct eighth amendment claims. He argues that defendants were deliberately indifferent to his safety as an inmate who had testified on behalf of the government. Second, he maintains that defendants were deliberately indifferent to his medical needs after the assault in the television room at Oxford. Finally, Robinson maintains that defendants violated the eighth amendment when they refused to release him from administrative detention into the general prison population.
 
 1. Safety concerns
 
 14
 To establish an eighth amendment violation based upon defendants' failure to protect him from the assaults at Terre Haute and Oxford, Robinson must show that prison officials were deliberately indifferent to his safety. See Wilks v. Young, 897 F.2d 896, 898 (7th Cir.1990); Santiago, 894 F.2d at 221; Richardson v. Penfold, 839 F.2d 392, 394 (7th Cir.1988); see also Helling v. McKinney, 113 S.Ct. 2475, 2480 (1993); Wilson v. Seiter, 111 S.Ct. 2321, 2327 (1991); Estelle v. Gamble, 429 U.S. 97, 104-06 (1976). Deliberate indifference requires a showing of the prison official's " 'actual intent or reckless disregard.' " Wilks, 897 F.2d at 898 (quoting Benson v. Cady, 761 F.2d 335, 339 (7th Cir.1985)). A defendant acts with reckless disregard in violation of the eighth amendment only if he had " 'actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.' " McGill v. Duckworth, 944 F.2d 344, 348 (7th Cir.1991) (quoting Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir.1985)), cert. denied, 112 S.Ct. 1265 (1992). "Ordinary negligence and even 'gross negligence' in the tort sense" are insufficient to establish deliberate indifference. McGill, 944 F.2d at 348.
 
 
 15
 Robinson first maintains that there are factual issues relating to the constitutional responsibilities of the defendants who were involved in transferring him from prison to prison within the federal system. In support of this argument, Robinson relies on our decision in Santiago v. Lane, supra, where we reversed a grant of summary judgment in favor of prison officials because of factual disputes relating to whether officials at the transferor prison had adequately warned officials at the transferee prison of Santiago's special protection needs. Robinson maintains that his affidavits establish that when he was transferred from prison to prison, the "transferee prisons disclaimed any understanding of [his] past problems and forced him to continually make efforts to establish and re-establish his safety needs." (Plaintiffs' Br. at 25.) Presumably, Robinson's theory is that the failure to provide adequate notice precipitated the later assaults. See Santiago, 894 F.2d at 222.
 
 
 16
 Although our cases establish Robinson's theory as a viable one, the record does not support his assertions. First, Robinson did not present evidence to establish that officials at the transferee prisons disclaimed any knowledge of his past security problems and that he was constantly required to bring those problems to their attention.[2] Instead, Robinson was classified in the Bureau of Prisons' CIM program, and his file included a list of inmates from whom he was to be segregated. When prison officials became aware that a particular prisoner posed a risk for Robinson, that prisoner's name would be added to the list, and appropriate protective measures would be taken. It appears that prison officials consistently responded when Robinson expressed a concern about his safety. Indeed, when Robinson was transferred to Oxford, prison officials reviewed with Robinson his CIM status as well as the list of prisoners from whom he was to be segregated. In short, the record does not establish that any of the defendants had actual knowledge of impending harm to Robinson and that they simply closed their eyes to that threat. Prison officials were therefore not deliberately indifferent to Robinson's safety needs in transferring him from prison to prison.
 
 
 17
 Robinson next contends that there were factual issues relating to the treatment he received at Oxford between August 1990 and March 1991. He argues that he was not placed in protective custody until after the March 6, 1991 attack despite the fact that he had made every effort to make Oxford officials aware of his dangerous predicament. However, the record establishes, and the district court found, that officials at Oxford took steps to ensure Robinson's safety. They approved his CIM classification and added two names to the list of inmates from whom Robinson was to be segregated. Robinson has not shown that prison officials had any reason to anticipate the alleged March 6, 1991 assault by inmates Troop and Hendrickson, and he has therefore failed to establish an issue of fact on this aspect of his claim.[3]
 
 
 18
 Finally, Robinson argues that this portion of his eighth amendment claim should be remanded because the district court did not have the benefit of the Supreme Court's recent decision in Hudson v. McMillian, 112 S.Ct. 995 (1992). In Hudson, the Supreme Court held that a prisoner may establish an eighth amendment violation even where he has not suffered serious injury. Id. at 1000. Robinson argues that remand is appropriate here because the district court may have based its decision on the extent of Robinson's injuries, an improper factor under Hudson. But there is no indication that the district court even considered the severity of Robinson's injuries in granting summary judgment. Robinson's argument would have more appeal if the district court had noted the absence of a serious injury, but it did not. Therefore, Hudson does not require a remand.
 
 2. Medical needs
 
 19
 Robinson also argues that summary judgment was inappropriate on his claim that prison officials were deliberately indifferent to a serious medical condition. Although Robinson concedes that "some" medical treatment was provided, he argues that he still suffered from serious medical problems to which defendants were indifferent. Again, however, the summary judgment record would not sustain a finding of deliberate indifference. Robinson received extensive treatment for his hemorrhoid condition, and he also did not appear for an independent medical examination that was to be performed by his own physician. Robinson failed to raise an issue of fact as to whether defendants were deliberately indifferent to his medical needs.
 
 3. Conditions of confinement
 
 20
 Next, Robinson maintains that the district court erred in granting summary judgment on the condition of confinement claim. This claim essentially is based on the fact that Robinson was placed in administrative detention for his own protection and then was kept in that segregated status after he requested a return to the general prison population. In a sense, Robinson alleges that prison officials failed to properly balance his concern for safety against the restrictions necessarily imposed as a result of detention status. In effect, Robinson seeks to be protected from those posing a danger to him, but he also faults a detention status that is too restrictive. Even if this were a viable claim, Robinson has failed to identify any condition of his detention confinement that would give rise to an eighth amendment violation.
 
 4. Discovery issues
 
 21
 Robinson contends that if he has failed to create an issue of fact on any aspect of his eighth amendment claim, it is the fault of the district court for unnecessarily restricting his opportunity to conduct discovery. Given more time and additional discovery, Robinson argues that he could have raised factual issues as to defendants' deliberate indifference. In fact, counsel acknowledged at oral argument that plaintiffs' position on appeal is not so much that the district court erred in finding a lack of deliberate indifference on the present record but that the district court prematurely terminated plaintiffs' case before they could discover facts that would establish deliberate indifference. All of Robinson's eighth amendment arguments therefore hinge on the lack of an adequate opportunity for discovery.
 
 
 22
 We recognize that the district court put this case on a fairly fast track--it scheduled the case for trial seven months after the filing of the complaint. Although various motions were filed and briefed during that seven-month period, there is no indication that plaintiffs were prevented from conducting discovery at any time. Indeed, plaintiffs' counsel conceded at oral argument that the district court never entered an order staying discovery and that discovery had been ongoing.[4] Moreover, when plaintiffs requested additional time to respond to the summary judgment motion, the district court provided two additional weeks for the presentation of supplemental evidentiary materials. Plaintiffs have not explained why their discovery could not have been conducted earlier--before the scheduled trial date--or what additional evidence they expected to find to establish their claims. Much of the evidence on which plaintiffs relied in opposing summary judgment was contained in affidavits that were a part of the original complaint. Thus, it does not appear that plaintiffs uncovered much, if any, additional evidence to support their claims in the seven intervening months. In these circumstances, the district court did not abuse its discretion in permitting only two additional weeks for discovery and in ruling on the summary judgment motion when it did.
 
 B. Equal Protection Claim
 
 23
 In granting summary judgment on plaintiffs' equal protection claim, the district court found that plaintiffs had not alleged the existence of an agreement among defendants to inflict a wrong on plaintiffs. Moreover, plaintiffs did not allege that they were deprived of any protected right by defendants' conduct. Finally, the district court concluded that racially derogatory remarks or racial harassment do not constitute an equal protection violation under 42 U.S.C. Sec. 1981. Plaintiffs maintain that the statements in their affidavits were sufficient to establish a violation of their equal protection rights.
 
 
 24
 Although the district court acknowledged the existence of racially derogatory remarks in the prison visitors' room, it focused on the allegations of plaintiffs' complaint, in particular the failure to plead the existence of an agreement or of the denial of a right protected by section 1981. Plaintiffs appear to concede that they may not have included sufficient allegations in their pleading. However, they point to the statements in the affidavits that were attached to their complaint to support their claim. There, Robinson stated that a number of defendants had made derogatory comments to him about his interracial relationship. Moreover, Robinson alleged that prison officials discouraged him from having Green or other white females visit him or send him mail. Green also states that there was constant harassment over correspondence she sent to Robinson, that there was a climate of tension and scorn in the visiting room, and that plaintiffs were not afforded some of the benefits that were afforded to other non-mixed-race couples. Although these allegations are fairly specific and may create factual disputes as to what occurred,[5] we agree with the district court that this sort of racial harassment is not actionable under section 1981 because it does not affect a constitutionally protected right. See Patterson v. McLean Credit Union, 491 U.S. 164 (1989); Malhotra v. Cotter & Co., 885 F.2d 1305, 1312 (7th Cir.1989) ("Patterson's central holding is that racial harassment is not actionable under [section 1981]"); Brooms v. Regal Tube Co., 881 F.2d 412, 424 (7th Cir.1989). Plaintiffs do not address this aspect of the district court's conclusion in their briefs, and it is fatal to their racial discrimination claim.
 
 III. CONCLUSION
 
 25
 For the foregoing reasons, the judgment of the district court is
 
 
 26
 AFFIRMED.
 
 
 
 *
 The Honorable Milton I. Shadur, Senior District Judge for the Northern District of Illinois, sitting by designation
 
 
 [1]
 The trial was scheduled to begin on August 23, 1991, but on plaintiffs' motion, it subsequently was rescheduled to October 11, 1991
 
 
 [2]
 Indeed, Robinson conceded at oral argument that he presented no evidence as to what information the transferee prisons had been provided
 
 
 [3]
 Robinson also argues that the district court erred because it effectively assumed that the prison's obligations to him were satisfied once Robinson was placed in segregation after the March 6, 1991 attack. Robinson contends that even while in segregation he was subject to further harassment, extortion, and threats, and that defendants failed to respond to his predicament. As the government points out, this argument questions the adequacy of the steps taken by defendants, not whether they were deliberately indifferent to Robinson's safety
 
 
 [4]
 Although our review of the record suggests that the district court did not set a discovery cut-off date, the court had set a schedule for the filing of dispositive motions and had even set a trial date. The district court's scheduling orders obviously contemplated that all discovery would be completed in advance of trial, and it was unreasonable for plaintiffs to think otherwise
 
 
 [5]
 Plaintiffs also rely on the abrupt termination of discovery to account for their failure to make out a racial discrimination claim. Yet we concluded above that the district court did not abuse its discretion in denying plaintiffs additional time to conduct discovery