70 F.3d 1274
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
David DRAGON, Petitioner-Appellant,
v.
Judith HUDSON, Sheriff, and John Doe, Jailor, Defendants-Appellees.
 No. 93-2365.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 3, 1995.
Decided Nov. 17, 1995.
 
 Before CUMMINGS, ESCHBACH and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Plaintiff David Dragon filed a civil rights action pro se pursuant to 42 U.S.C. Sec. 1983 against "John Doe, Jailor"[1] and Sheriff Judith Hudson, of Boone County, Indiana. Dragon's complaint alleged, among other things, that Hudson acted with "reckless disregard" in failing to notify the Indiana Department of Corrections (IDOC) that Dragon was at serious risk of being harmed by other inmates, in violation of the Eighth Amendment prohibition against cruel and unusual punishment. The district court granted Hudson's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), dismissing Dragon's claim with prejudice. Dragon filed this timely appeal only with regard to his Eighth Amendment claim. Because we believe Dragon adequately alleged a claim for which relief may be granted, we reverse.
 
 Background
 
 2
 Dragon's complaint sets forth the following allegations. Dragon was attacked in June of 1990 by fellow inmate Merill Spencer while the two were incarcerated at the Boone County Jail. Spencer attacked Dragon at the direction of another Boone County inmate, Steven Weaver, the "enforcer" of the Outlaw Motorcycle gang.[2] Following the attack, in the presence of jail personnel, Weaver pledged to eventually kill Dragon. Fearing for his life, Dragon wrote a note to Sheriff Hudson, informing Hudson of Weaver's threat. An unidentified jailor delivered the note to Hudson on Dragon's behalf. However, Dragon received no response. Two days later, Spencer was transferred to another prison.
 
 
 3
 In September of 1990, Dragon was convicted of child molestation and transferred to the IDOC by way of the Reception and Diagnostic Center in Plainfield, Indiana.[3] According to Dragon, at the time he was transferred, he was still subject to a substantial risk of serious harm as a result of Weaver's threat. Yet Sheriff Hudson neither informed the IDOC about the threat, nor had any policy in place for alerting the IDOC when a threatened inmate is at substantial risk of serious harm. On the contrary, in his response to Hudson's motion to dismiss, Dragon claims that Hudson's staff facilitated Weaver's plans for harming Dragon by permitting Weaver to conspire with the father of the child Dragon molested. (Brief of Appellant at App. 26).
 
 
 4
 Weaver was subsequently transferred from Hudson's custody to the IDOC. Sometime in November of 1990, both Dragon and Weaver were incarcerated in the same state prison. In May of 1991, Weaver attacked Dragon while he was sleeping, stabbing him five times in the back.
 
 Analysis
 
 5
 The Eighth Amendment places a duty on prison officials to take reasonable steps to insure the safety of inmates. Farmer v. Brennan, 114 S.Ct. 1970, 1976 (1994) (quoting Hudson v. Palmer, 486 U.S. 517, 526-27, 104 S.Ct. 3194, 3200 (1984)). Courts have uniformly extended that duty to include an obligation to protect inmates from harm by other inmates. Id. In cases involving prisoner transfers, this court has required prison officials of the prison where an inmate is housed to expressly notify officials of the receiving prison when a prisoner is at serious risk of being harmed by other inmates. Santiago v. Lane, 894 F.2d 218, 222-23 (7th Cir.1990).
 
 
 6
 Prison officials violate their Eighth Amendment duty to protect inmates when two requirements are met. First, the inmate must allege a sufficiently serious deprivation. Farmer, 114 S.Ct. at 1977. When the inmate's claim is based on a failure to prevent harm, the inmate must show that he was incarcerated under conditions objectively "posing a substantial risk of serious harm." Id. Second, the inmate must show that the prison official acted either deliberately or with "deliberate indifference" to the inmate's health or safety. Id. No liability will result unless the prison official "knows of and disregards an excessive risk to inmate health or safety...." Id. at 1979.
 
 
 7
 The allegations in Dragon's complaint are sufficiently clear to inform the court and the defendant of the nature of Dragon's claim. First, Dragon's complaint alleges that at the time he was transferred to the IDOC, he was at substantial risk of inmate attack. Second, he alleges that Hudson knew of the risk, and failed to warn the IDOC. Finally, Dragon alleges that Hudson acted with "reckless disregard" to deprive him of the protections of the Eighth Amendment. "It is ... fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm ... is the equivalent of recklessly disregarding that risk." Id. at 1978. Therefore, Dragon sufficiently alleged that Hudson acted with deliberate indifference.
 
 
 8
 Having determined that Dragon pleaded the requisite elements of a claim, our inquiry turns to whether Dragon can prove any set of facts that would entitle him to prevail. Whether Dragon's claims contain one shred of truth is not for this court to decide; we must assume in the posture of a 12(b)(6) motion that they are true. We believe that the allegations set forth in both Dragon's complaint and his response to Hudson's motion to dismiss preclude a determination that Dragon can prove no set of facts that would entitle him to relief. Santiago, 894 F.2d at 222-23.
 
 
 9
 For the purposes of 12(b)(6), our analysis stops here; Dragon's claim survives. However, the district court reached further to dismiss Dragon's claim. The district court suggested that Hudson's failure to warn was not the proximate cause of Weaver's attack, noting that Dragon himself failed to warn the IDOC. Although we understand the district court's reasoning, we do not have to decide this question for the purposes of 12(b)(6). In Walsh v. Brewer, 733 F.2d 473 (7th Cir.1984), this court held that where there is a constitutional violation, the district court "should consider compensation for harm, if any, resulting from the constitutional violation, and appropriate compensation for the constitutional violation itself," irrespective of whether subsequent harms suffered by the inmate plaintiff were proximately caused by the constitutional violation. Id. at 477 (citing Lenard v. Argento, 699 F.2d 874, 891 (7th Cir.1983), cert. denied, 464 U.S. 815, 104 S.Ct. 69 (1983)); see also Owen v. Lash, 682 F.2d 648, 658 (7th Cir.1982) (noting that courts have awarded substantial damages for deprivations of constitutional rights without proof of consequential injury). Dragon's claim survives regardless of whether Hudson's deliberate indifference proximately caused Weaver's attack.
 
 
 10
 Therefore, Dragon's failure to notify the IDOC himself of Weaver's threat does not defeat his claim. As noted above, all we need to consider is whether Dragon's complaint sufficiently alleges a constitutional violation. Harm to Dragon can arise from the constitutional violation itself. Further, if Dragon can establish that Hudson acted deliberately, Dragon's contributory negligence is no defense to Hudson's intentional tort. W. Page Keeton, Prosser and Keeton on Torts, Sec. 65 at 462 (5th ed. 1984).
 
 
 11
 Sheriff Hudson asks us to dismiss Dragon's claim by drawing inferences about Hudson's knowledge and intent from omissions in Dragon's complaint. Dragon's complaint is silent as to whether Hudson knew Weaver would be in the same prison with Dragon or whether Hudson knew other members of the Outlaw Motorcycle gang incarcerated in the IDOC would carry out Weaver's threat. However, the complaint need not be so specific; plaintiffs in federal suits are free to plead conclusions. When an inmate is proceeding pro se, this court has been especially tolerant of factual omissions. Jackson v. Marion County, 66 F.3d 151, 154 (7th Cir.1995). What is more, Hudson's knowledge and intent are factual questions. We have absolutely no information upon which to conclude that Dragon will be unable to establish these elements at trial. Santiago, 894 F.2d at 223 (holding that an inmate plaintiff's showing that officials at the transferor prison failed to take any action to notify officials at the recipient prison of the substantial risk of serious harm to an inmate is enough to create a material issue of fact). These questions are better left for subsequent proceedings.
 
 
 12
 Citing DeShaney v. Winnebago County Dep't of Social Services, 489 U.S. 189, 109 S.Ct. 998 (1989), Hudson also argues that she is not liable as a matter of law because when Dragon was harmed he was no longer in Hudson's custody. Hudson's argument runs counter to this Court's holding in Santiago v. Lane, 894 F.2d 218 (7th Cir.1990), that prison officials have a duty under the Eighth Amendment to notify officials of a receiving prison when the inmate in question is at substantial risk of serious harm. The Santiago analysis did not turn on the fact that both prisons in question were part of the same penal system. Nor did the transferring officials in Santiago avoid liability because Santiago was at another prison when he was injured. Thus, the Santiago analysis requires us to examine Hudson's conduct when she released Dragon to the IDOC. Dragon alleges that when Hudson transferred him to the IDOC, she breached her Eighth Amendment duty. Therefore, he states a claim.
 
 
 13
 In our view, the district court's ruling can only be affirmed if we interpret our prior holding in Santiago to permit suits by inmates only in cases in which the inmate is transferred between two state prisons or in cases in which the inmate is transferred for safety reasons. We decline to interpret Santiago so narrowly.
 
 
 14
 Therefore, the dismissal of Dragon's Eighth Amendment claim against Hudson for failure to notify the IDOC is REVERSED.
 
 
 
 [1]
 "John Doe, Jailor" was dismissed from the action on October 27, 1992. On appeal, Dragon does not challenge his dismissal
 
 
 [2]
 According to Dragon, Weaver is such a powerful figure that not only will other inmates in Hudson's jail execute his commands, but even Hudson herself feared retaliation from Weaver and his gang, causing Hudson to take additional security precautions while Weaver was in her custody. (Brief of Appellant at App. 24)
 
 
 [3]
 The Reception and Diagnostic Center is a receiving facility for all male prisoners entering the IDOC. The Center classifies inmates and assigns them to the appropriate correctional institution